UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RAVEN M. HINNANT,**

        Plaintiff,

v.                                                Civil Action No.  3:17-cv-586

**OLIPHANT FINANCIAL, LLC,**
**OLIPHANT III,**
**and**
**CONTRAXUS OLIPHANT,**

        Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This is an action by a consumer alleging damages for Defendants' violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices, and for its violations of the Electronic Fund Transfer Act, ("EFTA"), 15 U.S.C. §§ 1693 et seq., which prohibits unauthorized electronic transfers from financial accounts. Plaintiff also raises a state law claim based on Defendants' actions.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and the FDCPA, 15 U.S.C. § 1692k(d) and the EFTA, 15 U.S.C. § 1693m(g).

## PARTIES

3. Plaintiff Raven M. Hinnant ("Ms. Hinnant") is a natural person who resides in Richmond, Virginia. Ms. Hinnant is a consumer within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

4. Defendant Oliphant Financial, LLC ("Oliphant") is a debt collector, buyer of stale debt, and a collection agency, the principal purpose of whose business is the collection of debts, operating a debt collection agency with its principal place of business located in Sarasota, Florida.

5. Defendant Oliphant III is a debt collector, the principal purpose of whose business is the collection of debts, in whose name several attempts were made to debit money from Plaintiff's account at Navy Federal Credit Union.

6. Defendant Contraxus Oliphant is a debt collector, the principal purpose of whose business is the collection of debts, in whose name several attempts were made to debit money from Plaintiff's account at Navy Federal Credit Union.

7. Defendants regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are "debt collectors" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6).

## STATEMENT OF FACTS

8. On May 11, 2016, Ms. Hinnant filed a Chapter 7 bankruptcy petition in a matter styled *In re: Raven Michelle Hinnant*, E.D.Va. Bankr. No. 16-32386-KLP. Among the creditors listed on Ms. Hinnant's Schedule of Debts was First Pay Loans AKA Rosebud (Rosebud).

Accordingly, Rosebud was sent, via U.S. Mail, notice of the bankruptcy by the court, *see*, the Certificate of Notice to the Notice of Chapter 7 Bankruptcy Case, which is attached as Exhibit A.

9. On August 24, 2016, the Bankruptcy Court entered an Order of Discharge of Debtor (the "Discharge Order"). A copy of the Discharge Order is attached as Exhibit B. On August 27, 2016, the Bankruptcy Noticing Center mailed via first class mail the Discharge Order to FirstPay at the address listed in the Schedules.

10. Plaintiff's bankruptcy is a matter of public record, is on her credit reports, is in the files of the creditor, and is readily discoverable by any competent debt collector via one of the bankruptcy "scrub" services, such as Lexis/Nexis' Banco.

11. Nonetheless, Ms. Hinnant was advised by her bank, Navy Federal Credit Union (NFCU), by way of a notice on NFCU letterhead, dated January 12, 2017, and directed to First Pay Day Loan, a copy of which is attached as Exhibit C, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the above-referenced member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 11/18/16, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

12. Ms. Hinnant was also advised by a similar NFCU notice, also dated January 12, 2017, and directed to First Pay Day Loan, a copy of which is attached as Exhibit D, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the above-referenced

member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 12/05/16, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

13. Ms. Hinnant was further advised by yet another similar NFCU notice, also dated January 12, 2017, and directed to First Pay Day Loan, a copy of which is attached as Exhibit E, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the above-referenced member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 12/16/16, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

14. Ms. Hinnant was advised by a fourth January 12, 2017 NFCU notice, this one directed to Oliphant III, a copy of which is attached as Exhibit F, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the above-referenced member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 12/30/16, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

15. Ms. Hinnant was advised by a March 20, 2017 letter to her from NFCU, containing a subject line of "(R)E: RAVEN HINNANT and Oliphant III," a copy of which is attached as Exhibit G, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the above-referenced member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 1/27/17, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

16. Ms. Hinnant was similarly advised by a second March 20, 2017 letter to her from NFCU, also containing a subject line of "(R)E: RAVEN HINNANT and Oliphant III," a copy of which is attached as Exhibit H, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the above-referenced member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 02/10/17, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

17. Ms. Hinnant received a third March 20, 2017 letter from NFCU, containing a subject line of "(R)E: RAVEN HINNANT and Contraxus Oliphant," a copy of which is attached as Exhibit I, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the

above-referenced member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 02/24/17, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

18. Ms. Hinnant received a fourth March 20, 2017 letter from NFCU, also containing a subject line of "(R)E: RAVEN HINNANT and Contraxus Oliphant," a copy of which is attached as Exhibit J, that an "(A)utomated Clearing House (ACH) debit, made payable to your firm, was presented for payment to our above-referenced member's Navy Federal Account," the above-referenced member being Ms. Hinnant. The notice refers to Ms. Hinnant's checking account, shows a date of presentation of 03/13/17, in the amount of $94.92, states that "the item was returned unpaid due to insufficient funds," and that "(A)s a result, our member (Ms. Hinnant) was charged a $29.00 returned item fee," because "(N)avy Federal is unable to accept responsibility for the reimbursement of this fee."

19. Ms. Hinnant received a June 15, 2017 "(D)ear Member" letter from NFCU, a copy of which is attached as Exhibit K, advising Ms. Hinnant that an "item" in the amount of $94.92 "was presented for payment on 04/21/2017 and returned due to nonsufficient funds," and further advising her that "(A) total of $29.00 has been deducted from your account."

20. Ms. Hinnant received a June 15, 2017 "(D)ear Member" letter from NFCU, a copy of which is attached as Exhibit L, advising Ms. Hinnant that an "item" in the amount of $94.92 "was presented for payment on 05/05/2017 and returned due to nonsufficient funds," and further advising her that "(A) total of $29.00 has been deducted from your account."

21. Ms. Hinnant received a June 15, 2017 "(D)ear Member" letter from NFCU, a copy of which is attached as Exhibit M, advising Ms. Hinnant that an "item" in the amount of $94.92 "was presented for payment on 05/19/2017 and returned due to nonsufficient funds," and further advising her that "(A) total of $29.00 has been deducted from your account."

22. Thereafter, Ms. Hinnant received a June 21, 2017 "(D)ear Member" letter from NFCU, a copy of which is attached as Exhibit N, advising Ms. Hinnant that an "item" in the amount of $94.92 "was presented for payment on 06/20/2017 and returned due to nonsufficient funds," and further advising her that "(A) total of $29.00 has been deducted from your account."

23. Several weeks later, Ms. Hinnant received a July 6, 2017 "(D)ear Member" letter from NFCU, a copy of which is attached as Exhibit O, advising Ms. Hinnant that an "item" in the amount of $94.92 "was presented for payment on 07/05/2017 and returned due to nonsufficient funds," and further advising her that "(A) total of $29.00 has been deducted from your account."

24. About two weeks after that letter, Ms. Hinnant received a July 19, 2017 "(D)ear Member" letter from NFCU, a copy of which is attached as Exhibit P, advising Ms. Hinnant that an "item" in the amount of $94.92 "was presented for payment on 07/18/2017 and returned due to nonsufficient funds," and further advising her that "(A) total of $29.00 has been deducted from your account."

25. In addition to the attempted debits and presentations described in paragraphs 11 through 24, Plaintiff has received the following e-mails from the e-mail address of young-kings@oliphantfinancial.com:

a. June 16, 2017 at 3:16 p.m., a copy of which is attached as Exhibit Q, advising Ms. Hinnant "Your payment to Oliphant Financial LLC has been processed."

b. June 30, 2017 at 4:59 p.m., a copy of which is attached as Exhibit R, advising Ms. Hinnant "Your payment to Oliphant Financial LLC has been processed."

c. July 14, 2017 at 12:19 p.m., a copy of which is attached as Exhibit S, advising Ms. Hinnant "Your payment to Oliphant Financial LLC has been processed."

d. July 28, 2017, at 12:32 p.m., a copy of which is attached as Exhibit T, advising Ms. Hinnant "Your payment to Oliphant Financial LLC has been processed."

26. In addition to the attempted debits and presentations described in paragraphs 11 through 24 and the e-mails described in paragraph 25, Plaintiff has received calls to her personal cell phone on the dates and times listed below. Each call has resulted in an automated message being left on Plaintiff's voice mail system that contains the phone number 1-877-873-8710.

a. July 13, 2017 at 9:09 a.m.

b. July 13, 2017 at 12:43 p.m.

c. July 13, 2017 at 4:53 p.m.

d. July 13, 2017 at 5:06 p.m.

e. July 13, 2017 at 5:37 p.m.

f. July 24, 2017 at 3:17 p.m.

  g.  July 24, 2017 at 4:05 p.m.

  h.  July 25, 2017 at 9:05 a.m.

  i.  August 2, 2017 at 10:48 a.m.

27. The alleged debt was an internet payday loan, and was incurred primarily for personal, family, or household purposes, bringing Defendants' collection efforts within the purview of the FDCPA. 15 U.S.C. § 1692a(5).

28. Plaintiff first believed that all of the above actions were taken at the direction of Rosebud in violation of her bankruptcy discharge.

29. Accordingly, she reopened her bankruptcy action, and initiated adversary proceeding number 17-03289-KLP, Complaint to Determine Sanctions for Contempt for Violating Discharge Injunction Under 11 U.S.C. §524 ("the Bankruptcy Court Complaint"), which Plaintiff filed on April 25, 2017.

30. In that action, Plaintiff alleged that Rosebud was violating the discharge injunction of 11 U.S.C. § 524 by taking actions to collect a debt that was discharged by this Court on August 24, 2016, including by sending her emails and by repeatedly attempting to debit money from her bank account at NFCU.

31. Counsel for Rosebud advised Plaintiff's counsel that Rosebud was not currently collecting or attempting to collect any debt from Plaintiff and that it had no hired agent attempting to do so either; accordingly, Rosebud could not stop any attempted debits on Plaintiff's NFCU account, or so it asserted through its counsel.

32. Plaintiff then sent a notice to NFCU and Rosebud advising each of them that no further debits were authorized on the account. (Exhibits U and V).

33. On July 6, 2017, Valerie Hamilton, as counsel for Rosebud, delivered to counsel for Plaintiff, via email, a document entitled "Declaration of Clay Columbe Pursuant to Terms of Settlement of Litigation" (the "Declaration"), a copy of which is attached as Exhibit W.

34. The Declaration, signed by a person identifying himself as Clay Columbe, Chief Financial Officer of Rosebud Lending BHL, states in paragraph 3 that "Prior to December 1, 2016, Rosebud Lending/Rosebud Lending BHL, a subsidiary of Rosebud Economic Development Corporation ("Rosebud"), had an agreement with ERYCO S.A. (the "Servicer") for the Servicer to service and collect accounts due Rosebud."

35. Paragraph 4 of the Declaration states that "Plaintiff's account with Rosebud was one of the accounts that the Servicer was previously authorized to service and collect."

36. Paragraph 5 of the Declaration states that "the Servicer appears to have improperly delegated certain loan servicing and collection functions to a third party, who appears to be Oliphant Financial, LLC or its affiliates ("Oliphant")." It goes on to say that Rosebud has no relationship with Oliphant and never authorized Oliphant to service or collect Rosebud's loans.

37. The Declaration further states that Rosebud notified the Servicer on December 1, 2016 that it was terminating the Servicer, and it denies having authorized the emails and attempted debits after December 1, 2016 that were complained of in the Bankruptcy Court Complaint.

38. Consequently, not only were Defendants' actions undertaken regarding a debt that was no longer due but, since December 1, 2016, Defendant's actions were not authorized by the creditor in whose name they were purportedly taken.

39. In an effort to stop her account from continually being assessed charges resulting from Defendants' actions, Plaintiff sent another letter to NFCU asking it to take whatever steps necessary to stop the charges, including closing the account if necessary. (Attached as Exhibit X).

40. As a result of the acts and omissions of Defendants, Ms. Hinnant has suffered actual damages and injury, including but not limited to, unnecessary and illegal banking fees and charges, stress, mental anguish and suffering, and emotional distress.

41. Defendants' violations of federal law were material and caused concrete injury to Plaintiff because Defendants' continued collection communications, undertaken after Ms. Hinnant had filed for bankruptcy and received a discharge, denied her right to a fresh start that Congress had granted her under the Bankruptcy Code. Moreover, Defendants' continued collection communications denied her the right, which Congress had granted her under the FDCPA and the EFTA, to have such collection activity cease. Finally, she has been assessed fees by NFCU and is currently faced with her NFCU account being closed as the only way to stop the unlawful debits from harming her.

## COUNT ONE
## VIOLATION OF THE FDCPA - 15 U.S.C. § 1692e

42. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

43. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive or misleading representation or means in connection with the collection of any debt, including, but not limited to, the false representation of the character, amount or legal status of any debt, as provided at 15 U.S.C. § 1692e(2)(A).

44. Demanding payment of a debt that is no longer owed, due to a bankruptcy, is false and/or deceptive or misleading, in violation of § 1692e of the FDCPA.

45. Defendants' violations of § 1692e of the FDCPA render Defendants liable for actual and statutory damages, costs, and reasonable attorneys' fees, see, 15 U.S.C. § 1692k.

### COUNT TWO
### VIOLATION OF THE FDCPA - 15 U.S.C. § 1692f

46. Plaintiff adopts and realleges Paragraphs 1-41.

47. Section 1692f of the FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt, including, but not limited to, the collection of any amount unless permitted by law, as provided at 15 U.S.C. § 1692f(1), and the acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit, as provided at 15 U.S.C. § 1692f(2).

48. Defendants' violations of § 1692f of the FDCPA render Defendants liable for actual and statutory damages, costs, and reasonable attorneys' fees, see, 15 U.S.C. § 1692k.

### COUNT THREE
### VIOLATION OF THE EFTA - 15 U.S.C. § 1693 et seq.

49. Plaintiff adopts and realleges Paragraphs 1-41.

50. Under Section 1693e(a) of the EFTA and the regulations implementing it, preauthorized electronic fund transfers require written approval.

51. Any written approval for preauthorized electronic fund transfers regarding the Rosebud account was revoked by the filing of Plaintiff's bankruptcy.

52. Without regard to the bankruptcy filing, any written approval for Defendants to attempt preauthorized electronic fund transfers regarding the Rosebud account was revoked on December 1, 2016.

53. Without regard to the bankruptcy filing and Rosebud's specific withdrawal of authorization, any written approval for Defendants to attempt preauthorized electronic fund transfers regarding the Rosebud account was revoked by Plaintiff as shown in Exhibits U and V.

54. Each of the attempted transfers described in Paragraphs 11 through 24 above were violations by Defendants of the EFTA.

55. Defendants' violations of the EFTA render Defendants liable for actual and statutory damages, costs, and reasonable attorneys' fees, see, 15 U.S.C. § 1692m(a).

## COUNT FOUR
## VIOLATION OF VA. CODE § 8.01-221

56. Plaintiff adopts and realleges Paragraphs 1-41.

57. In the alternative of any of the transfers in Paragraphs 11 through 24 not being electronic fund transfers regulated by EFTA, such transfers were forged instruments in violation of Va. Code § 18.2-172, and in violation of the Virginia Uniform Commercial Code, Va. Code § 8.3A-101 et seq., including but not limited to Va. Code § 8.3A-401.

58. Plaintiff therefore seeks her damages under § 8.01-221.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

1. Enter a declaratory judgment that Defendants' practices violated the FDCPA and the EFTA and Virginia law;

2. Award Plaintiff actual damages;

3. Award Plaintiff statutory damages;

4. Award Plaintiff reasonable attorney's fees;

5. Award Plaintiff costs;

6. Such other relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

                                        Respectfully submitted,
                                        RAVEN M. HINNANT
                                        By Counsel

____/s/_____
Dale W. Pittman, (VSB #15673)
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

Emily Connor Kennedy (VSB #83889)
Mark C. Leffler (VSB #40712)
BOLEMAN LAW FIRM, P.C.
2104 W. Laburnum Ave., Suite 201
Richmond, VA 23227
Telephone (804) 358-9900

Thomas D. Domonoske (VSB #35434)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
Telephone (540) 442-7706
tom@clalegal.com

Counsel for Plaintiff